IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOLAN PREJEAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-CV-111-JED-FHM |
| CORRECTIONAL HEALTHCARE COMPANIES, INC., et al., | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

**I.   Background**

The following facts are alleged in the Complaint and are taken as true for purposes of this Opinion and Order. In February, 2011, while housed as a pretrial detainee in the David L. Moss Criminal Justice Center, also known as the Tulsa County Jail, plaintiff had surgery to repair a hernia. (Doc. 2 at ¶¶ 1-2). He was subsequently housed in the medical unit of the jail. He alleges that, on or about February 22, 2011, the Director of Nursing at the time, Darryl Payton, R.N., entered plaintiff's cell "for the alleged purpose of providing medical care to Plaintiff's wound." (*Id.* at ¶ 17). During the course of the examination, Payton "offensively, inappropriately and unnecessarily touched Plaintiff and asked questions with overt sexual overtones, on such topics as masturbation." (*Id.*). Plaintiff alleges that Payton was an employee or agent of Correctional Healthcare Companies, Inc. (CHC), Correctional Healthcare Management, Inc. (CHM), Correctional Healthcare Management of Oklahoma, Inc. (CHMO), and Sheriff Stanley Glanz. (*Id.* at ¶ 13).

After plaintiff reported the "sexual [sic] harassing conduct" to unnamed employees of the Tulsa County Sheriff's Office (TCSO) and the CHC, CHM, and CHMO defendants, Payton

instructed his medical staff that only Payton would thereafter provide medical care to the plaintiff. (*Id.* at ¶¶ 17-18). On or about March 10, 2011, Payton again entered plaintiff's cell in the medical unit. Plaintiff's surgical incision was infected, so he allowed Payton to conduct an examination. During the course of the examination, Payton inserted his finger into plaintiff's rectum, which was done "for the sexual gratification of Defendant Payton and was without any medical purpose but was an act which is fairly and naturally incident to the delivery of nursing care." (*Id.* ¶ 19).

Plaintiff's Complaint asserts claims against Sheriff Glanz, in his individual and official capacities, and against CHC, CHM, CHMO, and Mr. Payton. The Complaint includes claims under 42 U.S.C. § 1983 against all defendants for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution (First Claim), a negligence claim against the healthcare defendants (Second Claim), claims against Payton for sexual assault / battery (Third Claim) and intentional infliction of emotional distress (Fourth Claim), and claims against all defendants under the Oklahoma Constitution, art. II, §§ 7, 9, and 30, based upon a denial of needed medical care (Fifth Claim). All of the defendants have moved for dismissal (Doc. 5, 9, 18, 35).

## II.    Dismissal Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds ... does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

### III. Discussion

#### A. Section 1983 Claims

##### 1. The PLRA

All of the defendants seek dismissal for plaintiff's failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA). Plaintiff asserts in response that he was not an inmate at the time he filed suit, such that the PLRA does not apply to his claims. The PLRA, by its plain terms, applies to suits brought by inmates. If plaintiff was not an inmate at the time of filing, the PLRA does not apply. The statute requires exhaustion of administrative remedies with the jail before a suit is brought "by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). In *Norton v. City of Marieta, Okla.*, 432 F.3d 1145, 1150 (10th Cir. 2005), the Tenth Circuit directly held that "a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy

the PLRA's exhaustion requirements before bringing suit." This Court has applied that rule in a prior decision. *See Revilla v. Glanz*, 8 F. Supp. 2d 1336, 1345 (N.D. Okla. 2014).

### 2. **Darryl Payton, R.N.**

Defendant Payton first argues that the plaintiff's allegations do not establish that Payton was acting under color of state law for purposes of § 1983 liability. The Court disagrees. The Complaint specifically alleges that Payton was at the time the jail's Director of Nursing, was responsible for overseeing and providing medical care to plaintiff, and was at the relevant times in plaintiff's cell to ostensibly provide medical care following plaintiff's hernia surgery. Those allegations are sufficient to plausibly allege that Payton was acting under color of law for purposes of § 1983 liability. *See West v. Atkins*, 487 U.S. 42, 54 (1988) ("a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State"); *Nieto v. Kapoor*, 268 F.3d 1208, 1216 (10th Cir. 2001) (Tenth Circuit applied the reasoning in *West* to determine that a doctor under contract with the State was acting under color of law in a § 1983 equal protection and free expression case); *Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1337-39 (N.D. Okla. 2014).

Payton next argues for dismissal of the § 1983 claim on the ground that plaintiff's allegations do not state a plausible claim for cruel and unusual punishment under the Eighth and Fourteenth Amendments. The Eighth Amendment, which applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see, e.g., Lopez v. LeMaster*, 172 F.3d 756, 759, n.2 (10th Cir. 1999). The Supreme Court long ago determined that this prohibition extended to prison conditions, and not just punishments imposed as part of a sentence. *See, e.g.,*

4

*Estelle v. Gamble*, 429 U.S. 97, 102-04 (1976).  It is settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  A "serious injury" is not required in order to set out a claim.  *See id.* at 4.  That is "not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).  "Not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  *Id.* (quoting *Hudson*, 503 U.S. at 9).

Here, plaintiff alleges first that a nurse, while in his medical unit cell for the stated purpose of checking plaintiff's post-hernia surgery wound, "offensively, inappropriately and unnecessarily touched Plaintiff and asked questions with overt sexual overtones, on such topics as masturbation."  (Doc. 2 at ¶ 17).  The nature of the touching is not further described.  With respect to the second incident, alleged to have occurred on March 10, 2011, plaintiff alleges that he allowed defendant Payton to conduct an examination to check his surgical incision, which was infected, and that, in the course of that examination, Payton inserted his finger in plaintiff's rectum.  (*Id.* at ¶ 19).  Plaintiff acknowledges that the alleged digital rectal exam "was an act which is fairly and naturally incident to the delivery of nursing care," but he claims that it was done for Payton's "sexual gratification" rather than for a proper medical purpose.  (*Id.*).

As noted, the first alleged incident involved some form of touching that plaintiff has not described.  That allegation does not provide facts that would rise to a constitutional violation; he merely asserts that he was touched in some manner which he felt was unnecessary and inappropriate. (*See id.* at ¶ 17).  While a serious injury is not required, even malevolent touching does not necessarily give rise to a constitutional violation.  *See Hudson*, 503 U.S. at 9; *see also Rhoten v. Werholtz*, 243 Fed. Appx. 364, 365-66 (10th Cir. 2007) (unpublished) (allegations that

correctional officer, while conducting a pat-down search of the plaintiff, "slammed [him] against the wall, squeezed [his] nipples real hard, squeezed [his] buttocks, and pulled on [his] testicles real hard causing [him] a great deal of discomfort and pain," did "not state an Eighth Amendment violation."). A generic claim of inappropriate touching, as is alleged to have occurred on February 22, 2011, is plainly insufficient to state a claim under § 1983 for a constitutional violation.

The Court is also unwilling to determine that discussions involving a "sexual overtone" or masturbation satisfy the requisite standard required to state a claim for the unconstitutional infliction of cruel and unusual conduct upon an inmate. In this Circuit, verbally abusive language, racial epithets, taunts, death threats, and deplorable language toward an inmate do not amount to a constitutional violation. *See, e.g., McBride v. Deer*, 240 F.3d 1281, 1291, n.3 (10th Cir. 2001) (threats and verbal taunts do not violate the Eighth Amendment); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam) (threats to hang a detainee did not state a claim for constitutional deprivation under § 1983); *Moore v. Morris*, 116 Fed. Appx. 203 (10th Cir. 2004) (unpublished) (verbal abuse by use of a racial epithet does not constitute constitutional violation); *Yarbrough v. City of Kingfisher*, 1998 WL 427122, *2 (10th Cir. Jul. 14, 1998) (unpublished) (allegation that sheriff threatened inmate with death and used a racial epithet, without further action, did not establish constitutional violation under § 1983); *Williams v. Levansailor*, 1998 WL 426865 (10th Cir. Jul. 21, 1998) (unpublished) (allegations of racial epithets, which are deplorable, offensive and unprofessional, do not constitute a constitutional violation); *Harris v. Rocchio*, 1997 WL 7887185, *3 (10th Cir. Dec. 24, 1997) (unpublished) ("Insensitive words do not amount to an Eighth Amendment violation."); *Buford v. Leck*, 1993 WL 125412 (10th Cir. Apr. 20, 1993) (unpublished) ("Under 42 U.S.C. § 1983, this court has

held that words alone, no matter how reprehensible, are not sufficient to state a constitutional violation.").

As to Payton's alleged insertion of a finger in plaintiff's rectum, plaintiff's own allegations indicate that he allowed at least a partial physical exam because his incision was infected, the act is one which "is fairly and naturally incident to the delivery of nursing care," and plaintiff does not describe any other facts or circumstances indicative of sexual assault, other than an allegation as to Payton's subjective thinking – that it was done for Payton's sexual gratification. (*See* Doc. 2 at ¶ 19). No additional facts have been provided to indicate that there were any actions demonstrating a purposeful sexual assault or that Payton was somehow sexually gratified.

Even though plaintiff elsewhere in his Complaint describes the alleged digital-rectal contact as "rape" and "sodomy," his specific factual allegations expressly acknowledge that such an act is naturally incident to the delivery of nursing care and was done by a nurse while performing a medical examination relating to plaintiff's hernia surgery. These allegations do not include facts that state a plausible claim of cruel and unusual treatment. *See, e.g., Rhoten*, 243 Fed. Appx. 364; *Hill v. Rectenwald*, 2011 WL 3494967 (inmate with hernias and rectal discharge who was shackled and subjected to a doctor's insertion of a finger in his rectum, even though the inmate had demanded the doctor not do so, did not describe conduct that was objectively sufficiently serious as a matter of law to establish a claim, and his complaint was dismissed with prejudice), *adopted*, 2011 WL 3492748 (E.D. Ark. Aug. 10, 2011), *aff'd*, 471 Fed. Appx. 539 (8th Cir. 2012) (unpublished). Without more, the allegations of plaintiff's Complaint are insufficient to state a claim for a constitutional violation under the Eighth Amendment. Accordingly, the plaintiff's § 1983 claim against defendant Payton is dismissed.

For the foregoing reasons, the facts asserted by plaintiff do not state a claim. Plaintiff has not identified any additional facts which, if added by amendment, would state a claim of a constitutional violation, such that granting leave to amend would be futile. Therefore, the plaintiff's § 1983 claims are **dismissed with prejudice**. *See Grossman v. Novell*, 120 F.3d 1112, 1126 (10th Cir. 1997) (where amendment would be futile, dismissal with prejudice is not an abuse of discretion); *Bereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."); *Tennant v. Miller*, __ Fed. Appx. __, 2014 WL 5509779 (10th Cir. Nov. 3, 2014) (because the plaintiff failed to identify "how he could have cured the pleading defect," district court's dismissal with prejudice was not an abuse of discretion).

### 3. Correctional Healthcare Entities

Plaintiff has sued the Correctional Healthcare entities based upon a municipal liability theory. (*See* Doc. 2 at ¶¶ 44-53). Because the Petition fails to state a plausible claim that plaintiff's constitutional rights were violated, plaintiff may not maintain any § 1983 claims against any of the Correctional Healthcare entities that are alleged to have employed him. *See, e.g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (there can be no municipal liability where there was no underlying constitutional violation). Accordingly, the § 1983 claims against the private entities will also be **dismissed with prejudice**.

### 4. Sheriff Glanz

Because the Petition fails to state a plausible claim that plaintiff's constitutional rights were violated, plaintiff may not maintain any § 1983 claims against Sheriff Glanz, in his individual / supervisory capacity, or in his official capacity. *Olsen*, 312 F.3d at 1317-18;

*Martinez v. Beggs*, 563 F.3d 1082, 1091-92 (10th Cir. 2009) ("A county or sheriff in his official capacity cannot be held 'liable for constitutional violations when there was no underlying constitutional violation by any of its officers' ... [and a sheriff] cannot be held liable in his individual capacity ... under a theory of supervisory liability, when there was no violation of [a plaintiff's] constitutional rights."). For that reason, the § 1983 claims against Sheriff Glanz, in his individual and official capacities, will also be **dismissed with prejudice**.

The Court also notes that, even had plaintiff stated a plausible claim for a violation of his constitutional rights, the Complaint would still fail to state a claim against Glanz, because the Petition contains only boilerplate language regarding policies and fails to include any factual allegations sufficient to show personal involvement by Glanz or to provide any facts which, if true, would establish a causal connection between the alleged policies and the alleged injury. A municipality or county may not be held liable under § 1983 solely because its employee (or as alleged in this case, its agent) inflicted injury; municipal liability cannot be found by application of the theory of *respondeat superior*. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[L]ocal governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

To establish municipal liability under § 1983, a plaintiff must show "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton,*

*Ohio v. Harris*, 489 U.S. 378, 385 (1989)). The requirement of a policy or custom distinguishes the "acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Connick*, 131 S. Ct. at 1359.

A supervisor may also not be held liable individually under a theory of respondeat superior. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citing *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013)). "[M]ere negligence is insufficient to establish supervisory liability." *Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999). Three elements are required to establish supervisory liability: (1) personal involvement; (2) causation; and (3) state of mind. *Schneider*, 717 F.3d at 767. Although federal courts appear to uniformly agree that the Supreme Court's *Iqbal* decision imposes a stricter liability standard for the "personal involvement" element of a claim for supervisor liability, the Tenth Circuit has not yet determined the contours of that standard. *See, e.g., Booker*, 745 F.3d at 435 (noting the contours of the personal involvement requirement set forth in *Iqbal* "are still somewhat unclear after *Iqbal* ... [but] [w]e need not define those contours here...."). But the Tenth Circuit has not overruled its post-*Iqbal* decision that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights ... secured by the Constitution....'" *Dodds v. Richardson*, 614 F.3d 1185,

1199 (10th Cir. 2010) (quoting § 1983). A plaintiff may therefore establish supervisor liability by showing that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199-1200.

Given the limited nature of the alleged wrongdoing in this case, the Complaint does not state a plausible claim against Sheriff Glanz, officially or individually. Plaintiff alleges that nurse Payton, while in plaintiff's medical unit cell for the stated purpose of checking plaintiff's post-hernia surgery wound, "offensively, inappropriately and unnecessarily touched Plaintiff and asked questions with overt sexual overtones, on such topics as masturbation." (Doc. 2 at ¶ 17). As alleged, there is no logical relationship whatsoever, much less "a direct causal link" or any degree of causation between any policy of the TCSO or Sheriff Glanz and the conduct or injury alleged. *See Graves*, 450 F.3d 1215. For example, with respect to a lack of cameras in the medical unit generally, plaintiff has not identified how a camera would prevent any individual, whether a nurse or other staff at the jail, from asking an inmate improper questions or engaging in discussions involving overt sexual overtones.

With respect to the second incident, alleged to have occurred on March 10, 2011, plaintiff alleges that he permitted defendant Payton to conduct a physical examination to check his surgical incision, which was infected. There is no causal link, much less a direct one, between any TCSO policy that is identified in the Complaint and the fact that Payton allegedly inserted his finger in plaintiff's rectum during the exam. The "policies" or failures which plaintiff alleges in the Complaint include (1) a failure to implement adequate housing and supervision policies responsive to inmates housed in the medical unit, (2) a practice of inadequate supervision and

safety precautions with respect to known "blind spots," areas known as being unmonitored by video equipment, (3) a policy of understaffing the medical unit, such that only one Detention Officer was on duty at times, and (4) a failure to train staff concerning sexual misconduct and reporting requirements. (Doc. 2 at ¶¶ 27-30). Plaintiff has not identified any causal link between any such policies and the specific conduct to which plaintiff alleges he was subjected.

The plaintiff's allegations of wrongdoing are very limited, and there is no indication that the presence of a camera or a second detention officer on the medical unit would prevent a nurse from entering the medical unit cell of an inmate to ostensibly perform nursing care and, while there, allegedly exceeding the scope of a proper medical examination by performing acts that are "naturally incident to the delivery of nursing care." There is also no allegation that Sheriff Glanz had any knowledge of a risk of harm to the plaintiff from defendant Payton or that there was any policy or practice of permitting nurses to conduct allegedly unnecessary rectal examinations. While plaintiff cites other cases as applicable here, the specific factual allegations of wrongdoing in this case are distinct in that there appears to be no causal nexus between the conduct averred by plaintiff and the alleged policies, practices, or failures of defendants. In light of plaintiff's allegation that the alleged digital-rectal contact "was an act which is fairly and naturally incident to the delivery of nursing care" and that Payton's job was to deliver medical care to inmates, there is simply too large of an analytical causation gap to state a plausible claim against Sheriff Glanz for that act.

**B. State Law Claims**

The remaining claims, the Second, Third, Fourth, and Fifth Claims asserted in plaintiff's Complaint, all arise under the laws of the State of Oklahoma. The plaintiff invoked this Court's original jurisdiction based upon federal question jurisdiction under 28 U.S.C. § 1331 and

supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a). (Doc. 2 at ¶¶ 5-6). Because the only federal claims asserted in the Complaint are hereby dismissed, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). The Court's determination to decline to exercise supplemental jurisdiction is further bolstered by the fact that the parties have presented a host of novel issues with respect to the application of state law to these parties and the facts alleged. Plaintiff's state law claims for negligence, assault and battery, intentional infliction of emotional distress, and his claims under the Oklahoma Constitution and *Bosh* are thus **dismissed without prejudice**. *See Merrifield v. Bd. of County Comm'rs for County of Santa Fe*, 654 F.3d 1073, 1085-86 (10th Cir. 2011).

**IV. Conclusion**

For the foregoing reasons, the dismissal motions (Doc. 5, 9, 18, 35) are **granted**. The First Claim of plaintiff's Complaint, asserted under 42 U.S.C. § 1983, is hereby **dismissed with prejudice**. The Second, Third, Fourth and Fifth Claims of the Complaint, which assert claims under state law, are hereby **dismissed without prejudice** in accord with 28 U.S.C. § 1367(c)(3).

SO ORDERED this 18th day of February, 2015.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE